UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE


Richard M. Merrick, MD

   v.                                                  Civil No. 10-cv-55-SM

Littleton Regional Hospital,
Warren West, and Linda Gilmore


**O R D E R**

Dr. Richard Merrick, an emergency-department physician who has Tourette's Syndrome, asserts seven claims against his former employer and two of its employees. His complaint includes claims for disability discrimination under both the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, et seq. (Count I), and section 354-A of the New Hampshire Revised Statutes Annotated ("RSA") (Count II). Merrick's claims arise from the circumstances leading to his departure from Littleton Regional Hospital ("the Hospital") in late 2009 or early 2010.

Before the court is Merrick's motion to compel the Hospital to provide certain information related to complaints filed against other emergency-department physicians in its employ. The Hospital objects, identifying concerns about relevance and citing New Hampshire's quality assurance privilege, RSA § 151:13-a. For the reasons given, Merrick's motion is granted in part and denied in part.

## Background

As described in Merrick's complaint, the factual background is as follows. Merrick has both attention deficit hyperactivity disorder ("ADHD") and Tourette's Syndrome, which causes motor and verbal tics. He began working for the Hospital's emergency department in 1999. His contract with the Hospital promised him a minimum of seven twenty-four-hour shifts per month. He also served as the medical director of the Hospital's Department of Occupational & Employee Health from 2002 until he was removed from that position in March of 2009.

In early August of 2008, while treating a patient with critical injuries and numerous complications, Dr. Merrick exhibited several tics that resulted from the stress associated with handing a difficult case.[1] Shortly thereafter, Merrick was told not to report to work, due to the Hospital's concerns about his fitness for duty, and the Hospital suspended Merrick from August 8 through August 22. After an investigation, the Director of the Hew Hampshire Professional Health Program reported her opinion that Merrick could return to emergency-room work without restriction, and that he did not require further monitoring from the program.

---

[1] The complaint does not further describe Merrick's tics.

After the August 2008 incident, the Hospital placed Merrick under increased scrutiny.  In January of 2009, the Hospital cut Merrick's hours in half by giving him twelve-hour shifts rather than twenty-four hour shifts.  In August of 2009, the Hospital ordered Merrick to take a leave of absence, and then sent him for a week-long psychological evaluation at the Menninger Clinic.[2]  That evaluation resulted in a recommendation that Merrick could return to work, so long as he did not work more than forty-eight hours per week and had no shifts longer than twelve hours.  After Merrick returned from the Menninger Clinic, he remained on an involuntary leave of absence.

At that point, Merrick determined that the Hospital would not allow him to return to work, so he sought employment elsewhere.  At one point, he applied for a temporary license to practice in Maine, but his application was never processed because the Hospital did not respond to a request for confirmation of his employment from the Maine licensing board. In mid December, Merrick gave the Hospital ninety days' notice that he was leaving to take a job in Vermont.  In response, the Hospital offered to schedule Merrick for twelve-hour shifts,

---

[2] While the complaint does not allege what prompted the Hospital's actions in August of 2009, the memorandum of law in support of Merrick's motion to compel states that "[t]he Hospital asserts that additional concerns about Dr. Merrick's conduct reported on October 16, 2008, and August 16 and 17, 2009, caused it to place Dr. Merrick on administrative leave." Pl.'s Mem. of Law (doc. no. 14-1), at 2.

starting on January 1, 2010, and continuing until the date on which his new job was to commence.  In making that offer, the Hospital asked Merrick to provide adequate assurance that he would comply with the recommendations of the Menninger Clinic and the New Hampshire Professional Health Program.  This action followed.

## Discussion

Merrick's complaint includes claims for disability discrimination, based upon his Tourette's Syndrome and ADHD, under both federal and state law.  In his second set of interrogatories, Merrick made the following request:

> Identify all complaints against physicians in the emergency department at Littleton Regional Hospital during the past five (5) years.  Describe in detail the circumstances of each, and the action taken by the Hospital to investigate.  As to each incident, provide a detailed explanation of the consequences to the physician involved (e.g., whether a formal written reprimand resulted, administrative leave, or other consequence)."

Pl.'s Mot to Compel (doc. no. 14), at 1.  Defendants responded:

> Objection.  The Complaint Management process at LRH is confidential and protected as a Quality Improvement activity under NH RSA 151:13-a, and privilege is claimed thereunder.  Furthermore, any review of the quality of care provided by a physician is protected and confidential under NH RSA 329:29-a, and as such will also not be released pursuant to this privilege.

Id.

4

In his motion to compel, Merrick explains the relevance of the information he seeks:

> To properly present this case, Dr. Merrick needs evidence related to concerns expressed about the conduct of other doctors on the staff at Littleton Hospital, and the way the hospital administration handled those situations.  The evidence will be used to demonstrate the difference between the way the hospital handled concerns expressed about Dr. Merrick, and concerns about other physicians.

Pl.'s Mem. of Law (doc. no. 14-1), at 2.  Merrick then argues that the privileges defendants invoke are categorically inapplicable under the circumstances of this case and that, even if the privileges do apply, they are not nearly so broad as defendants contend they are.[3]  Defendants assert that the material Merrick seeks is not relevant and, in addition, is protected by RSA § 151:13-a.

In Counts I and II, Merrick claims that the Hospital discriminated against him on account of his disability, in violation of the ADA and RSA § 354-A, by taking eleven different employment actions against him in response to complaints and/or concerns about four episodes of conduct consistent with his Tourette's diagnosis.  Merrick's discrimination claim appears to be that when the Hospital responded to complaints about him, it

---

[3] Merrick also argues that the material the Hospital provided to the Menninger Clinic is not related to quality assurance, but because the interrogatory at issue says nothing about that material, its relevance to the motion before the court is unclear.

treated him more harshly than it treated other emergency-department physicians when complaints were lodged against them. To prove that claim, he seeks information about all complaints against the Hospital's other emergency-department physicians for the last five years.

Merrick is entitled to only a part of what he seeks. There are any number of things an emergency-department physician might do that could elicit a complaint from a patient (or, for that matter, a colleague). Plainly, the hospital's response to a complaint about the quality of care a patient received from a physician has no relevance to this case. But, on the other hand, if patients (or others) have made complaints about physician behavior that was similar to the Tourette's Syndrome behavior ascribed to Merrick, then the Hospital's response to that conduct could, potentially, be relevant to a disability-discrimination claim. That is, one could plausibly argue that disability discrimination was afoot if Merrick was sanctioned severely for exhibiting a vocal tic while another physician, who did not have Tourette's Syndrome, was disciplined only mildly for using offensive language in the presence of a patient.

In order to determine whether there are any relevant comparators, Merrick is entitled to a list of all complaints against the Hospital's emergency-department physicians lodged over the last five years. He is further entitled to the initial

6

complaint in each of those cases. Because initial complaints are created before any quality assurance process has begun, they are not records protected by the quality assurance privilege. See RSA § 151:13-a. Both the list and the complaints may be redacted or treated in some other way that protects any identifying information contained therein. In addition to the initial complaints, Merrick is entitled to information about any employment actions that resulted from those complaints where the physician conduct that prompted the complaint was substantially similar to the conduct on his part that set the events of this case in motion. Two caveats. Merrick is not entitled to information on the disposition of complaints in which the triggering conduct was not similar to his; the disposition of those complaints is simply irrelevant. And, while Merrick is entitled to information on the sanctions, if any, that were imposed on the physicians whose offending conduct was similar to his, he is entitled to know only what sanctions were imposed; he is not entitled to any material generated by the Hospital during its investigation and disposition of those complaints. Such material plainly qualifies as a record of a quality assurance committee and is, therefore, protected by the quality assurance privilege. See RSA § 151:13-a, I(a); Defs.' Obj., Ex. A (doc. no. 15-2).

**Conclusion**

For the reasons given, Merrick's motion to compel, doc. no. 14, is granted in part and denied in part. Specifically, Merrick is entitled to all that he seeks in the first sentence of paragraph 2 of his second set of interrogatories. As to the second sentence, he is entitled to a description of the circumstances of the complaints against other emergency-department physicians, but not to any records generated during the investigation of those complaints. As to the third sentence, he is entitled to what he seeks, but only with respect to incidents of physician conduct similar to his own.

**SO ORDERED.**

_____
Landya B. McCafferty
United States Magistrate Judge

Date: March 23, 2011

cc: Edward M. Kaplan, Esq.
    David W. McGrath, Esq.
    David W. Slawsky, Esq.